UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DERREK D. ATKINSON,

              Plaintiff,

v.

KENT COUNTY CORRECTIONAL
FACILITY,

              Defendant.

_____/

Case No. 1:25-cv-1179

Honorable Jane M. Beckering

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate

Order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss

any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state

a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from

such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's

*pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept

Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v.

Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's

amended complaint for failure to state a claim against Defendants Kent County Correctional

Facility Kent County Correctional Facility (KCCF), Flanigan, Fennema, Knott, and Pavlovic. The

Court will also dismiss, for failure to state a claim, the following claims against remaining

Defendant Curtis: First Amendment claims concerning the right to send and receive mail, access

to the courts, and free exercise of religion, Fourteenth Amendment equal protection claims, claims

regarding Plaintiff's use of the grievance process, and conspiracy claims. Plaintiff's First Amendment retaliation claim against Defendant Curtis remains in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated in the KCCF, located in Grand Rapids, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the KCCF, as well as the following KCCF staff: Deputy Sheriff Michael Curtis, Sergeant B. Flanigan, Sergeant Unknown Fennema, Lieutenant B. Knott, and Captain J. Pavlovic.

Plaintiff alleges that in June 2024, Defendant Curtis played Christian music loudly over his Bluetooth speaker. (Am. Compl., ECF No. 11, PageID.25.) Plaintiff, a Muslim, complained to Defendant Curtis. (*Id.*) On June 12, 2024, Defendant Curtis gave Plaintiff a Bible, saying "you need this." (*Id.*)

On February 17, 2025, Defendant Curtis instructed his trustee to remove Plaintiff's cleaning supplies while Plaintiff was still cleaning and "only half done." (*Id.*) When Plaintiff told Defendant Curtis that he was not done cleaning, Defendant Curtis told Plaintiff, "You are now!" (*Id.*) The trustee told Plaintiff that Plaintiff was taking too long to clean and "he was ready to go back to bed." (*Id.*)

On February 18, 2025, Plaintiff filed a grievance against Defendant Curtis. (*Id.*) Defendant Flanigan and a non-party sergeant visited Plaintiff and spoke with him. (*Id.*) Plaintiff ultimately "declined to press a grievance." (*Id.*, PageID.26.)

On February 20, 2025, Defendant Curtis "timed [Plaintiff] in," claiming that Plaintiff did not answer him loudly enough during morning head count. (*Id.*) Later than morning, Defendant Curtis stopped Plaintiff at lunch to remind him of his being timed in. (*Id.*) That afternoon, Plaintiff submitted a kite, requesting to file a grievance; however, Defendant Curtis intercepted Plaintiff's

kite. (*Id.*) Plaintiff and others later saw Defendants Flanigan and Fennema "passing a single kite." (*Id.*) That evening, Plaintiff asked non-party Deputy Lane to retrieve his missing kite, but it was gone. (*Id.*) Plaintiff never received a response to this kite or "several more." (*Id.*, PageID.26–27.)

On March 3, 2025, two white inmates never woke to answer Defendant Curtis during morning head count but were not reprimanded. (*Id.*, PageID.27.)

On August 15, 2025, after repeated requests, non-party Sergeant Vernocke allowed Plaintiff to file a grievance. (*Id.*) However, on August 20, 2025, Defendant Knott "interviewed [Plaintiff] with aggressive hostile impatience," and told Plaintiff that they would not be investigating Plaintiff's claims. (*Id.*) Plaintiff noticed that the cover page of an affidavit that Plaintiff had mistakenly submitted to the 61st District Court was in Defendant Knott's papers. (*Id.*) Defendant Knott told Plaintiff that the court had sent it back to "them to resolve." (*Id.*)

Defendant Pavlovic agreed with Defendant Knott's decision not to investigate Plaintiff's grievance. (*Id.*, PageID.28.)

Plaintiff alleges that the foregoing actions demonstrate "discrimination, retaliation, intimidation, obstruction[,] and conspiracy." (*Id.*) He seeks monetary and punitive damages. (*Id.*, PageID.29.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

3

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Claims Against KCCF

Plaintiff names KCCF as a Defendant. However, KCCF is a building that houses inmates; it is not a person and it "is not a legal entity susceptible to suit." *Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002); *see also Goldman v. Kalamazoo Cnty. Jail*, No. 1:16-cv-359, 2016 WL 3180043, at *2 (W.D. Mich. June 8, 2016) (collecting cases that hold a local jail is not a person subject to suit under § 1983). For that reason alone, the Court will dismiss Plaintiff's amended complaint against KCCF.

### B.     First Amendment Retaliation Claims

Plaintiff alleges that Defendants retaliated against him, in violation of his First Amendment rights. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

First, it is well-established that an inmate has a right to file "non-frivolous" complaints and grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). Here, Plaintiff alleges that he first complained to Defendant Curtis about Defendant Curtis' Christian music in June 2024. (Am. Compl., ECF No. 11, PageID.25.) Plaintiff also complained verbally and in writing that Defendant Curtis instructed the trustee to take Plaintiff's cleaning supplies on February 17, 2025 (*id.*), and that Defendant Curtis gave Plaintiff a warning on February 20, 2025 (*id.*, PageID.26). For purposes of this early stage of the proceedings, the Court finds Plaintiff has alleged that he engaged in First Amendment protected conduct when Plaintiff filed complaints and grievances on his own behalf. However, that does not end the Court's inquiry.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one

and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendant's conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). Finally, to satisfy the third element of a retaliation claim, Plaintiff must allege facts that support an inference that the alleged adverse action was motivated by the protected conduct.

Here, Plaintiff alleges that, eight months after Plaintiff commented about Defendant Curtis' Christian music, Defendant Curtis told the trustee to remove Plaintiff's cleaning supplies when Plaintiff was only half done with his cleaning assignment. He also claims that, after filing a grievance against Defendant Curtis, Defendant Curtis issued Plaintiff an unfounded reprimand and intercepted Plaintiff's kite requesting to file a grievance. While Plaintiff has by no means proven his claims, the Court will allow Plaintiff to proceed with his First Amendment retaliation claims against Defendant Curtis at this stage of the litigation.

As against the remaining Defendants, Plaintiff claims that he saw Defendants Flanigan and Fennema "passing a single kite." He alleges that Defendant Knott was angry and impatient with him when determining not to investigate his grievance, and that Defendant Pavlovic agreed with Defendant Knott's decision not to investigate his grievance. Taking these allegations as true, Plaintiff merely alleges the ultimate fact of retaliation without providing any supporting facts. Such "conclusory allegations of retaliatory motive 'unsupported by material facts'" do not state a claim under § 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (citation omitted); *see Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of

malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Accordingly, the Court will dismiss Plaintiff's First Amendment retaliation claims against the remaining Defendants.

### C.    First Amendment Right to Send and Receive Mail Claims

Plaintiff contends that his mail, including a cover page of an affidavit sent mistakenly to the 61st District Court, was "intercepted." (Am. Compl., ECF No. 11, PageID.27–28.) Defendant Knott told Plaintiff that the court had sent the paper back to "them to resolve, and not back to the center to be readdressed." (*Id.*, PageID.27.)

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987).

The Sixth Circuit has held that "'blatant disregard' for mail handling regulations concerning legal mail violates constitutional protections," *Merriweather v. Zamora*, 569 F.3d 307, 317 (6th Cir. 2009) (citing *Lavado v. Keohane*, 992 F.2d 601, 609 (6th Cir. 1993)), and that "[t]wo or three pieces of mail opened in an arbitrary or capricious way suffice to state a claim." *Id.* (citing *Sallier v. Brooks*, 343 F.3d 868, 879–80 (6th Cir. 2003); *Lavado*, 992 F.2d at 609). However, "isolated instances of interference with prisoners' mail" may not rise to the level of a constitutional violation under the First Amendment. *See Johnson v. Wilkinson*, No. 98-3866, 2000 WL 1175519,

7

at *2 (6th Cir. Aug. 11, 2000) ("This random and isolated interference with Johnson's mail did not violate his constitutional rights." (citation omitted)); *see also Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997) (holding that an "isolated incident, without any evidence of improper motive resulting interference with [the inmate's] right to counsel or to access to the courts, does not give rise to a constitutional violation" (citations omitted)); *Okoro v. Scibana*, 63 F. App'x 182, 184 (6th Cir. 2003) (stating that "Okoro was only able to provide one specific incident where he allegedly did not receive the full contents of a letter from his wife," and concluding that "[s]uch a random and isolated incident is insufficient to establish a constitutional violation" (citation omitted)); *cf. Colvin v. Caruso*, 605 F.3d 282, 293 (6th Cir. 2010) (citing *Johnson* for the holding that "isolated interference" with prisoners' rights may not rise to the level of a First Amendment violation). Recently, in *Smith v. Goostrey*, No. 23-1025, 2023 WL 5024659 (6th Cir. Aug. 4, 2023), the Sixth Circuit, citing *Colvin*, confirmed that a single isolated event of tampering with legal mail "does not rise to the level of a constitutional violation." *Id*. at *3.

Here, Plaintiff alleges only a single instance of the improper handling of Plaintiff's mail. These facts, accepted as true, do not suggest blatant disregard for mail handling. *See Okoro, supra*; *Johnson*, 2000 WL 1175519, at *2.

Moreover, Plaintiff's allegations fail to plausibly suggest that any named Defendant *intentionally* interfered with Plaintiff's ability to send and receive mail. Plaintiff contends that he believes that this piece of mail should have been given to him, but he does not allege facts that support an inference that any named Defendant *intentionally* withheld his mail. Plaintiff must allege more factual content to "nudge his claim . . . across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted).

It is well established that negligent conduct will not state a constitutional claim under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 330 (1986) (holding that the protections of the Due Process Clause of the constitution are not "triggered by a lack of due care by prison officials.") (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. . ."), and *Baker v. McCollum*, 443 U.S. 137, 1464 (1979) (holding that false imprisonment does not violate the Fourteenth Amendment simply because the defendant is a state official)). Numerous courts have recognized that a prison official's negligent interference with a prisoner's First Amendment rights does not violate the constitution. *See, e.g., Colvin,* 605 F.3d at 293–94 (holding that isolated incidents of negligence by prison officials in implementing kosher food requirements is not actionable under the First Amendment); *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (isolated acts of negligence in providing kosher diet do not support a free-exercise claim); *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ("[Plaintiff] must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983.") (citing *Daniels*, 474 U.S. at 330).

Because Plaintiff's amended complaint fails to allege facts that would plausibly suggest that the named Defendants intentionally interfered with Plaintiff's right to send and receive mail, he fails to state a First Amendment claim arising out of any interference with his mail.

**D.      First Amendment Access to the Courts Claims**

Plaintiff alleges that he had been missing the cover page of the "affidavit from [his] complaint" found in Defendant Knott's papers. (Am. Compl., ECF No. 11, PageID.27.) The Court has liberally construed Plaintiff's allegations to raise claims for interference with Plaintiff's access to the courts.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts prohibits prison

9

officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead that the defendants actions have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

10

Plaintiff's amended complaint does not include any well-pleaded factual allegations that would allow the Court to infer that the issues with Plaintiff's mail hindered a non-frivolous legal claim in a direct appeal, habeas corpus application, or civil rights claim. Therefore, any claims for interference with Plaintiff's access to the courts related to the missing page of Plaintiff's affidavit are properly dismissed.

To the extent that Plaintiff is attempting to raise a First Amendment access to the Court's claim based upon the denial of Plaintiff's grievances, he cannot. Defendants' actions (or inactions) in response to Plaintiff's grievances have not barred Plaintiff from seeking a remedy for his complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis*, 518 U.S. at 355 (requiring actual injury); *Bounds*, 430 U.S. at 821–24. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

11

Considering the foregoing, the Court finds that Plaintiff has failed to state a cognizable First Amendment claim for interference with his access to the courts

### E.    First Amendment Free Exercise of Religion

Plaintiff alleges that Defendant Curtis "forc[ed] his religion" on Plaintiff when Defendant Curtis played his Christian music loudly and gave Plaintiff a Bible. (Am. Compl., ECF No. 11, PageID.25.)

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To claim that this right has been violated, Plaintiff must plead facts that would plausibly suggest (1) that the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same).

A practice will not be considered to infringe on a prisoner's free exercise of religion unless it "place[s] a substantial burden on the observation of a central religious belief or practice . . . ." *Hernandez v. C.I.R.*, 490 U.S. 680, 699 (1989). "[T]he Supreme Court has made clear that the 'substantial burden' hurdle is high." *Living Water Church of God v. Charter Twp. of Meridian*,

258 F. App'x 729, 734 (6th Cir. 2007). "[A] 'substantial burden' is a difficult threshold to cross." *Id*. at 736. Such a burden "must place more than an inconvenience on religious exercise." *Id*. at 739 (quoting *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2014)). A particular government action will not be considered a substantial burden merely because it "may make [the] religious exercise more expensive or difficult." *Id*. A burden is substantial where it forces an individual to choose between the tenets of his religion and foregoing governmental benefits or places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Living Water*, 258 F. App'x at 733–34 (citations omitted); *Marshall v. Frank*, 2007 WL 1556872, at *5 (W.D. Wis. May 24, 2007) (discussing that a substantial burden is one which renders religious exercise "effectively impracticable" (quoting *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 761 (7th Cir. 2003)).

Here, Plaintiff has not provided the Court with any facts regarding his religious beliefs such that the Court could conclude that the Defendant Curtis' action placed a substantial burden on Plaintiff's sincerely held religious beliefs. In relying solely upon conclusory allegations and legal conclusions without any supporting facts, Plaintiff asks the Court to fabricate plausibility to his claim from mere ambiguity; but ambiguity does not support a claim. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678-79. Therefore, the Court will dismiss Plaintiff's First Amendment free exercise claims.

### F.    Fourteenth Amendment Equal Protection Claims

Plaintiff alleges that he brings claims of "discrimination." (Am. Compl., ECF No. 11, PageID.28.) He claims that Deputy Curtis verbally reprimanded Plaintiff for not answering loud enough during morning headcount while two white inmates "who never wake to answer, escape any reprimand whatsoever." (*Id.*, PageID.26–27.)

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must plead facts to show "intentional and arbitrary discrimination" by the state; that is, Plaintiff must show that Plaintiff "has been intentionally treated differently from others similarly situated." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Plaintiff's amended complaint does not contain sufficient facts or allegations to support an equal protection claim. He alleges that two white inmates were not reprimanded in the same manner that he was reprimanded. However, Plaintiff does not provide the Court with any facts that would suggest that these inmates were similarly situated to Plaintiff in all relevant respects. Accordingly, Plaintiff's allegations of discriminatory treatment fail to state a claim under § 1983 and will be dismissed.

### G.    Claims Regarding Plaintiff's Use of the Grievance Process

Plaintiff alleges that Defendants interfered with his use of the grievance process. This allegation fails to state a claim for violation of Plaintiff's constitutional rights.

First, Plaintiff has no due process right to file a jail administrative grievance. The courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th

14

Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at \*2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at \*1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, the conduct of Defendants related to Plaintiff's use of or attempted use of the grievance process did not deprive Plaintiff of due process.

Second, any actions (or inactions) of Defendants with regard to the grievance process could not constitute a violation of the First Amendment right to petition the government. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Third, Plaintiff has not been barred from all means of petitioning the government for redress of grievances. Even if Plaintiff had been improperly prevented from filing a grievance, his right to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by

the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy,* 20 F. App'x at 470–71.

Therefore, for each of the foregoing reasons, the Court will dismiss Plaintiff's claims related to Plaintiff's use of the grievance process.

### H. Conspiracy Claims

Plaintiff alleges that Defendants engaged in a "conspiracy." (Am. Compl., ECF No. 11, PageID.28.) A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez* 826 F.2d at 1538.

Here, Plaintiff does not facts that would suggest that any "agreement" or "plan" existed between Defendants. Instead, Plaintiff's allegations of conspiracy are wholly conclusory. As the United States Supreme Court has held, even allegations hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim

where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, because Plaintiff does not allege facts to show an agreement among Defendants, Plaintiff fails to state a plausible § 1983 civil conspiracy claim

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants KCCF, Flanigan, Fennema, Knott, and Pavlovic will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendant Curtis: First Amendment claims concerning the right to send and receive mail, access to the courts, and free exercise of religion, Fourteenth Amendment equal protection claims, claims regarding Plaintiff's use of the grievance process, and conspiracy claims. Plaintiff's First Amendment retaliation claim against Defendant Curtis remains in the case.

An Order consistent with this Opinion will be entered.


Dated:      April 28, 2026                              /s/ Jane M. Beckering
                                                        Jane M. Beckering
                                                        United States District Judge

17